**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| CAMELLA L. JAMES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **CIVIL ACTION NO. 2:08-CV-685-WKW** |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Following an Appeals Council remand of an unfavorable decision in her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*, and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*, Camella L. James ("James") received a hearing before an administrative law judge ("ALJ") who rendered a second unfavorable decision. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained, the court recommends the Commissioner's decision be AFFIRMED.

**I.   STANDARD OF REVIEW**

Judicial review of the Commissioner's decision to deny benefits is limited. The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find the

Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), citing *Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.  ADMINISTRATIVE FINDINGS

James, age 34 at the time of the hearing, completed tenth grade. James's past work

experience includes employment as a housekeeper, poultry processor, and sewing machine operator.[1] She has engaged in substantial gainful work activity intermittently during the period of adjudication.[2] James's application lists her back, wrist, and cancer as causes of her disability.[3] The ALJ found James was severely impaired by back pain, depressive disorder NOS, and alcohol abuse, but that she did not have any impairment or combination of impairments that meet or equal in severity any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[4]

In March, 2004, James reported constant back pain and nervousness that produces physical shaking to Dr. Vijay Vyas. James denied a history of back injury or heavy lifting, and acknowledged drinking 3-4 beers at a time.[5] Dr. Vyas observed her to be extremely nervous and shaking all over.[6] Walter Jacobs, Ph.D., conducted a psychological examination of James in October, 2004. Dr. Jacobs reported James's heavy drinking, arrest for public intoxication, and past work in a cotton mill, sewing factories, poultry processing, and hotel

---

[1] R. at 268.

[2] R. at 24. On April 3, 2003, James filed a Title II application for disability insurance benefits and a Title XVI application for supplemental security income, each alleging a disability onset date on July 15, 1999. After these claims were denied, a request for review by the Appeals Council resulted in a remand order issued on March 22, 2007. The remand order directed the ALJ to review post-hearing evidence, further evaluate James's alleged mental impairment as directed, and obtain supplemental evidence from a vocational expert, if warranted. R. at 86.

[3] R. at 116.

[4] R. at 24, 25.

[5] R. at 209-10.

[6] R. at 210.

housekeeping. James did not display pain behavior or symptoms of anxiety during the interview.[7] Dr. Jacobs found James to be a "person of limited intellectual ability" with a full scale IQ score of 62.[8] His diagnosis listed alcohol abuse, depressive disorder NOS, and mild mental retardation.[9] The prognosis categorized James as mildly retarded with "little in her work history to suggest much higher functioning."[10] Dr. David Arnold conducted a clinical assessment of pain in May, 2007. Dr. Arnold rated James's pain as distracting, but not to such an extent as to prevent adequate functioning in walking, standing, sitting, bending, stooping, and moving of extremities.[11] The pain assessment also rated James able to sit or stand/walk up to four hours in an eight hour day, with an "occasional" limitation on her ability to climb stairs and bend/stoop.[12]

James testified about her education and work history during the administrative hearings. Her disability application specifically states she completed the eleventh grade and did not attend special education classes.[13] James testified during both hearings that she was enrolled in special education classes through the tenth grade, and that she has limited reading

---

[7]R. at 217-18.

[8]R. at 219-20.

[9]R. at 220.

[10]R. at 220.

[11]R. at 224.

[12]R. at 225.

[13]R. at 120.

and writing skills.[14] She testified that her hands shake and she cannot return to her job in a sewing factory.[15] James acknowledged having the skills to work as a hotel maid, but could not do so because she falls during the day.[16] She stated her back pain on an average day is seven out of ten, that she can sit comfortably for a maximum of two hours at a time, has nerve problems, and has high blood pressure.[17]

A vocational expert (VE) was asked to summarize James's past relevant work. The VE listed housekeeper, poultry processor, and sewing machine operator as light and unskilled.[18] The ALJ then asked the VE to assume an individual able to perform a full range of light work with mild to moderate postural limitations, no manipulative limitations, environmental limitations of avoiding hazards, dangerous machinery and heights, with mild mental retardation. The VE testified that such a person could perform all of James's past relevant work as well as additional jobs at the light, unskilled level.[19]

The ALJ noted James work as a hotel housekeeper and textile worker during the adjudication period.[20] The ALJ found James is severely impaired by back pain, depressive

---

[14]R. at 254, 266; 255-56.

[15]R. at 255-56.

[16]R. at 257.

[17]R. at 266-67.

[18]R. at 268.

[19]R. at 268-69.

[20]R. at 24.

disorder NOS, and alcohol abuse.[21] The decision explains that, although James reported problems with anxiety to Drs. Vyas and Jacobs, the record does not show she was ever treated for this condition. In addition, Dr. Jacobs reported that he did not see any signs of anxiety in James during the examination.[22] The ALJ found James did not establish the existence of a severe intellectual impairment despite having IQ scores in the range specified by Listing 12.05. Factors in this conclusion were the ALJ's consideration of differing histories as to James's enrollment in special education classes. The variances in her histories led him to conclude there is "no credible evidence that intellectual deficits were manifested during the developmental period."[23] The decision explained James's "work history and demonstrated ability to perform substantial gainful activity as a textile worker/sewing machine operator strongly suggests a higher level of adaptive functioning."[24] The ALJ specifically adopted Dr. Jacobs's report in determining James's mental limitations.[25]

The ALJ concludes James could perform light work with mild to moderate postural limitations, with the specific mental limitations reported by Drs. Jacobs.[26] The decision stated that James had received "the benefit of the doubt" as to her back pain, as "the record

---

[21] R. at 24-25.

[22] R. at 25.

[23] R. at 25.

[24] R. at 25.

[25] R. at 25.

[26] R. at 25-26.

contains no x-rays, MRI studies or other diagnostic studies establishing the presence" of back pain, and the absence of any treatment for that condition. The ALJ specifically rejects Dr. Arnold's opinion that pain would distract James from daily activities or work. The ALJ noted the record shows no history of mental health treatment with the exception of medications taken during incarceration.[27]

The ALJ then reviewed the credibility factors set forth in 20 C.F.R. §§ 404.1529(c) and 416.929(c) before concluding James's medically determinable impairments could reasonably be expected to produce the alleged symptoms but that her statements as to the limiting effects of those symptoms were not entirely credible. The ALJ summarized James's past medical problems by noting an absence of medical treatment since 1998 and a failure to seek follow up treatment for cervical dysplasia despite multiple warnings by physicians and her awareness of free or low cost medical services. The ALJ concludes his credibility assessment by writing James's "recent and ongoing work activity provided credible evidence that she has retained the ability to perform her past work at all times relevant to this decision."[28]

Accordingly, the ALJ determination that James can perform her past relevant work directed a conclusion that she is not disabled, and therefore not entitled to benefits under the

---

[27]R. at 26.

[28]R. at 27.

Act.[29]

## III.  ISSUES

James raises three issues for judicial review:

1. The ALJ committed reversible error by substituting his judgment for that of a medical expert.

2. The ALJ committed reversible error by determining James did not meet the listing at 20 C.F.R. 404 Subpart P § 12.05 C.

3. The ALJ committed reversible error by making materially inconsistent findings without sufficient explanation.

## IV.  DISCUSSION

**1.  The ALJ did not substitute his judgment for that of a medical professional.**

James argues the ALJ inappropriately substituted his judgment for that of a trained medical professional on the issue of her mental functioning.  The Commissioner responds the medical opinion at issue was based on erroneous information.[30]

The opinion at issue was written by Dr. Walter Jacobs, who categorizes James as mildly retarded with "little in her work history to suggest much higher functioning."[31]  The

---

[29]R. at 28.  The ALJ's disability analysis followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520 and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).

[30]The Commissioner asserts Dr. Jacobs was unaware of the full extent of James's past work. Def. Br. at 3-4.  On the contrary, Dr. Jacobs's report shows he was aware of her past work in sewing factories, a cotton mill, poultry plant, and hotels at the time of his October, 2004 consultation.  R. at 217-18.

[31]R. at 220.

8

ALJ specifically adopts Dr. Jacobs's assessment of James after finding her "work history and demonstrated ability to perform substantial gainful activity as a textile worker/sewing machine operator strongly suggests a higher level of adaptive functioning."[32] James views the ALJ's findings as judgment substitution forbidden by the Eleventh Circuit. *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir. 1992).

The quote cited as grounds for reversal appears in the "Prognosis" section of Dr. Jacobs's report. The opinion states James "appears to be mildly retarded," with "little in her work history to suggest much higher functioning."[33] The Court views Dr. Jacobs's report in the context in which it was presented - as a prognosis. Through this prism, the statement simply conveys Dr. Jacobs's opinion that James's work history does not indicate a higher level of vocational ability beyond that already shown. It is important to note that Dr. Jacobs was not referring to the regulatory term "adaptive functioning," as that term is employed in the Commissioner's regulations and the ALJ's findings. *See* 20 C.F.R. 404 Subpart P § 12.05. ("Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period . . . .").

The Court finds the ALJ did not substitute his judgment for the medical opinion offered by Dr. Jacobs. Though both statements at issue contain the word "functioning," the differing meanings of the respective statements are sufficiently distinguished by context and

---

[32]R. at 25.

[33]R. at 220.

9

regulatory usage.

## 2. The ALJ did not err in finding James does not meet the criteria of 20 C.F.R. 404 Subpart P §12.05 C.

James argues the ALJ erred in his determination because he failed to find her mild mental retardation does not meet the listing at 20 C.F.R. 404 Subpart P §12.05(C). The Commissioner responds James did not prove her disability because the record in her case does not meet all the criteria set forth in Listing §12.05.

James asserts her full scale IQ score of 62 (placing her in the mild range of mental retardation), and physical impairments (as determined by the ALJ), leave only the introductory paragraph of Listing 12.05 to be satisfied for disability under 12.05(c). The Listing states "[M]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period . . . ." 20 C.F.R. 404 Subpart P § 12.05. The regulation continues by setting out four sets of alternative criteria, each of which qualify an applicant for disability if the deficits in adaptive functioning are also present. Subparagraph C states "[A] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function." 20 C.F.R. 404 Subpart P § 12.05(C). The Eleventh Circuit has stated

> Generally, a claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than "minimal effect" on the claimant's ability to perform basic work activities. This court, however, has recognized that a valid I.Q. score need not

>be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior.

*Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (internal citation omitted).

James is correct in stating the first paragraph of Listing 12.05 is critical to a showing of disability in her case, and her brief correctly cites *Hodges v. Barnhart*, 276 F.3d 1265 (11th Cir. 2001) for its holding that courts in this Circuit presume IQ levels remain fairly constant throughout life. *Hodges*, 276 F.3d at 1268-69. However, the Court holds the true issue in James's case is not the date James manifested intellectual deficits, but "other evidence in the record on the claimant's daily activities and behavior." *Id*. A showing of disability under § 12.05 requires "a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997); *see also Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1207 (M.D. Ala. 2002) (holding a claimant must demonstrate "deficits in adaptive behavior" under § 12.05).

The ALJ acknowledges Dr. Jacobs's diagnosis of mild mental retardation, but notes conflicting testimony and statements as to whether James attended special education classes.[34] This factual discrepancy was used as evidence against James's manifestation of intellectual deficits during the developmental period. Regardless, the ALJ found James's "work history and demonstrated ability to perform substantial gainful activity . . . strongly

---

[34]R. at 25.

11

suggests a higher level of adaptive functioning."[35]  The ALJ cited James's work history and ongoing work activity as the most credible evidence of record that she is able to perform her past work.[36]  The Court finds that James's high level of adaptive functioning does not negate the presumption of lifelong retardation, but it does negate her assertion that she meets the criteria under the first paragraph of Listing 12.05.

An ALJ is required to consider a claimant's activities and work history when interpreting § 12.05(C).  *Lowery*, 979 F.2d at 837.  This court has followed the Eleventh Circuit and recognized the importance of these factors when applying § 12.05(C).  *See Whetstone v. Barnhart*, 263 F.Supp.2d 1318, 1325-26 (M.D. Ala. 2003).  The ALJ's determination that James was able to perform past relevant work or other occupations stands on even firmer ground when one considers that, whatever limitations her mental functioning may impose, they were no impediment during her previous employment in various occupations.  Her work history and higher adaptive functioning provide firm support for the ALJ's decision that James did not meet the criteria for Listing 12.05.

### 3.    The previous ALJ decision is not binding on remand.

Finally, James argues the ALJ decision should be reversed because it contains findings which are materially inconsistent with the previous ALJ decision.  The Commissioner responds the original ALJ decision was based on inaccurate statements by James, which were clarified on remand.

---

[35] R. at 25.

[36] R. at 27.

James believes she is entitled to a reversal because the ALJ decision under review did not find she is severely impaired by mental retardation despite the finding in the original ALJ decision that she was so impaired.[37]  James argues the two findings are materially inconsistent and must be resolved pursuant to Social Security Ruling (SSR) 96-8p.  The Order of Appeals Council remanding this case vacated the original ALJ decision.[38]  This issue is without merit because "specific findings contained in that first written decision were never conclusively established and were subject to modification."  *Gibbs v. Barnhart*, 130 Fed. Appx. 426, 430 (11th Cir. 2005).  Thus, the ALJ was not bound by his earlier findings regarding James's mental abilities and he did not err in reaching a different conclusion as to her impairments.  *Id*.

The ALJ's determination in James's case is supported by substantial evidence, and this court finds no reversible error in the ALJ's decision.

## V.  CONCLUSION

For the reasons explained in this *Recommendation*, the Magistrate Judge concludes that the ALJ's decision is supported by substantial evidence or proper application of the relevant law, and therefore, **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED.**

*It is further ORDERED that the parties shall file any objections to the said*

---

[37] R. at 24, 47.

[38] R. at 86-87.

***Recommendation by April 13, 2009.*** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 31st day of March, 2009.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE